UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIK BILAL KHAN,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>STEVIE KNIGHT,<br><br>　　　　Respondent. | Civil Action<br>No. 23-3068 (CPO)<br><br>**OPINION** |

**O'HEARN, District Judge.**

Petitioner is a federal prisoner currently incarcerated at Federal Correctional Institution Fort Dix, in Fort Dix, New Jersey. He is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) For the reasons stated in this Opinion, the Court will deny the Petition.

## I.　　BACKGROUND

This case arises from the Bureau of Prison's ("BOP") determination that Petitioner is ineligible to earn time credits under the First Step Act ("FSA"), 18 U.S.C. § 3632(d)(4)(D), due to his convictions for child pornography offenses.

By way of background, the United States District Court for the District of New Mexico sentenced Petitioner to a 240-month term of incarceration child pornography related offenses, including distribution, receipt, possession, and attempted production of illicit materials involving minors, in violation of 18 U.S.C. §§ 2251(a), 2251(e), 2252(a)(2), 2252(a)(4)(B), 2252(b)(1), 2252(b)(2), and 2256. (*See United States v. Khan*, Crim. No. 12-2901, ECF No. 174 at 1–3); (*see also* ECF No. 8-2, ¶ 10).

As the Court will discuss in greater detail below, Petitioner alleges that his inability to earn FSA credits violates his equal protection rights because other types of sex offenders are eligible to

earn such credits. (*See* ECF No. 1 at 2, 6; ECF No. 1-3 at 2–6.) Respondent argues that the Petition should be dismissed for failure to exhaust[1] and, in any event, the Petition lacks merit. (*See* ECF No. 8, at 10–16.) According to Respondent, Congress rationally excluded certain categories of offenders from receiving FSA credits, based on the nature of their crimes. (*Id.* at 12–16.)

It appears that Petitioner did not challenge his eligibility directly with the BOP, choosing instead to initiate this habeas action. (ECF No. 1 at 2–3; ECF No. 1-3, at 2–3.) Petitioner filed the instant Petition in June of 2023, (ECF No. 1), Respondent filed an Answer, (*see* ECF No. 8), and Petitioner filed a Reply, (ECF No. 13).

## II.   STANDARD OF REVIEW

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998). If a court does not dismiss the petition at the screening stage, the court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)). "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

---

[1] As the Court intends to deny the Petition on the merits, the Court declines to address the issue of exhaustion. Further, as Petitioner brings a statutory challenge, it is likely that he was not required to exhaust his claim. *See Vasquez v. Strada*, 684 F.3d 431, 433–34 (3d Cir. 2012).

### III. DISCUSSION

Petitioner argues that because certain sex offenders are eligible to earn FSA credits, his ineligibility, as a child pornography offender, violates his right to equal protection under the Fifth Amendment. (*See* ECF No. 1-3 at 2–6.)  In response, Respondent contends that his statutory ineligibility under 18 U.S.C. § 3632(d)(4)(D), is constitutionally valid because Congress may distinguish among categories of offenders based on the nature of their crimes. (*See* ECF No. 8, at 12–16.)

"Although the Fifth Amendment does not contain an equal protection clause, the Supreme Court has construed the Fifth Amendment's Due Process Clause as containing an equal protection guarantee." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 n.112 (3d Cir. 2016) (citing *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991)); *see also Cabrera v. Att'y Gen. United States*, 921 F.3d 401, 404 (3d Cir. 2019).  Courts analyze Fifth Amendment equal protection claims "under the same principles that apply to [equal protection] claims under the Fourteenth Amendment." *Abdul-01 v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001); *see also Cabrera*, 921 F.3d at 404; *Day v. Ibison*, 530 F. App'x 130, 134 (3d Cir. 2013).

Thus, to prevail on an equal protection claim, a petitioner must show: (1) that the "Government has treated him differently from a similarly situated party," and (2) "that the Government's explanation for the differing treatment does not satisfy the relevant level of scrutiny." *Cabrera*, 921 F.3d at 404 (quoting *Real Alts., Inc. v. Sec'y Dep't of Health & Human Servs.*, 867 F.3d 338, 348 (3d Cir. 2017)) (emphasis removed).  "Classifications involving fundamental personal rights or suspect distinctions such as race, religion, or alienage are subject to heightened scrutiny," but classifications that do not "are subject to the more deferential rational-basis review." *Id.* (internal quotation marks omitted); *Abdul-Akbar*, 239 F.3d at 317.

Turning to the first prong, to establish that two groups are similarly situated, a petitioner must demonstrate that the groups are alike "in all relevant respects." *Stradford v. Sec'y Pennsylvania Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022) (quoting *Harvard v. Cesnalis*, 973 F.3d 190, 205 (3d Cir. 2020)). The groups need not be "identically situated," but courts should "seek relevant similarity." *Harvard*, 973 F.3d at 205 (internal quotation marks omitted); *Royster v. Laurel Highlands Sch. Dist.*, 595 F. App'x 105, 108 (3d Cir. 2014). A petitioner "must allege more than 'broad generalities' in identifying a comparator," and courts must "isolate the factor allegedly subject to impermissible discrimination." *Stradford*, 53 F.4th at 74 (internal quotation marks omitted). If other factors can explain the disparate treatment, it will usually preclude groups from "being similarly situated." *Id.* (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)). Further, as is relevant in the present case, "[w]hen evaluating whether offenders are similarly situated under the Equal Protection Clause, [a court] must assess the nature of their respective crimes." *Id.*

Here, Petitioner contends that prisoners convicted of child pornography offenses are similarly situated to prisoners convicted of "coercion, enticement, or transportation offense[s] involving minors under 18 U.S.C. §§ 2422(b) or 2423(a)." (ECF No. 13, at 7). *See generally* 18 U.S.C. § 3632(d)(4)(D)(xxxix), (xli) (excluding child pornography related crimes under 18 U.S.C. § 2251 and § 2252). As a result, Petitioner must show that prisoners convicted of child pornography offenses and those convicted of coercion, enticement, or transportation of minors, are alike "in all relevant respects." *See Stradford*, 53 F.4th at 74 (quoting *Harvard*, 973 F.3d at 205).

Petitioner argues that both sets of prisoners are similarly situated because their offenses: (1) are serious sex related felonies; (2) require sex offender registration; (3) require a mandatory term of imprisonment and term of supervised release; (4) authorize a maximum lifetime term of

4

supervised release; (5) authorize a $5,000 special penalty assessment; (6) harm minor victims; (7) require evaluation for civil commitment prior to release; (8) generate numerous collateral effects of conviction; and (9) were established by Congress to protect children. (*See* ECF No. 1-3, at 4; ECF No. 13, at 8–9.)

These comparisons, however, are "broad generalities" that primarily focus on the consequences for *offenders* of such crimes. *See Stradford*, 53 F.4th at 74.  Petitioner fails to meaningfully compare the nature of these crimes, and largely ignores the different effects these crimes have on *victims* and society. (*See* ECF No. 1-3, at 3–5; ECF No. 13, at 5–18).  These differences can be relevant, as "not all crimes are alike," and "[d]ifferences between crimes might reasonably explain differences in treatment." *Stradford*, 53 F.4th at 74.

For example, the nature of the underlying conduct of these crimes are materially different. Some child pornography crimes involve the passive receipt, possession, or distribution of illicit content, frequently without any direct contact with a victim, *see* 18 U.S.C. §§ 2252, 2252A, while others require direct contact with a specific victim, *see* 18 U.S.C. § 2251.  In contrast, coercion, enticement, and transportation of a minor require a proactive effort to engage with or exploit a specific minor, generally reflecting more direct and deliberate conduct. *See* 18 U.S.C. §§ 2422(b), 2423(a).  Indeed, these offenses require the Government to prove that a defendant took concrete steps toward persuading or physically moving a specific minor for unlawful sexual activity, often involving direct communications, planning, or travel. *See* 18 U.S.C. §§ 2422(b), 2423(a).

Similarly, the nature of how these crimes impact victims and society differ in meaningful ways.  Coercion, enticement, and transportation typically involve a discrete harm against a specific minor, often in the context of a single event. *See* 18 U.S.C. §§ 2422(b), 2423(a).  On the other hand, each viewing, possession, or distribution of child pornography, inflicts a form of recurring

harm that perpetuates a victim's abuse, which revives trauma and prevents victims from fully relegating that trauma to the past. *See New York v. Ferber*, 458 U.S. 747, 759 n.10 (1982) (noting that child pornography "poses an even greater threat to the child victim than . . . sexual abuse or prostitution . . . [because] the pornography may haunt him in future years, long after the original misdeed took place" and he "must go through life knowing that the recording is circulating within the mass distribution system for child pornography"); *United States v. Ramey*, 721 F. App'x 135, 138 (3d Cir. 2018) (explaining how child pornography perpetuates abuse and continuing victimization); *Paroline v. United States*, 572 U.S. 434, 457 (2014) ("In a sense, every viewing of child pornography is a repetition of the victim's abuse."); *United States v. Thompson*, No. 08-53, 2011 WL 3438864, at *2 (W.D.N.C. Aug. 5, 2011) (collecting cases). Victims of child pornography often describe the continued circulation of their depictions as a lifelong violation of their dignity and privacy, making child pornography offenses unique. *See, e.g.*, *Paroline*, 572 U.S. at 440–43 (illustrating the persistent and "devastating harm caused by child pornography" to victims).

Additionally, child pornography harms children and society more broadly than coercion, enticement, or transportation. The demand for child pornography creates psychological and economic incentives to produce new content, which in turn drives a global market that harms and exploits children. *See United States v. Ramey*, 721 F. App'x 135, 138 (3d Cir. 2018); *United States v. Buesing*, 615 F.3d 971, 976 (8th Cir. 2010); *United States v. Conway*, No. 20-207, 2021 WL 398229, at *2 (D. Nev. Feb. 4, 2021); *United States v. R.V.*, 157 F.Supp.3d 207, 255–56 (E.D.N.Y. Jan. 21, 2016). Thus, unlike coercion, enticement, and transportation of minors, which tend to involve a discrete event, child pornography offenders participate in a broader infrastructure of criminality and ongoing cycle abuse. *See Ramey*, 721 F. App'x at 138; *Conway*, 2021 WL 398229,

at *2; *R.V.*, 157 F.Supp.3d at 255–56.  While the Court does not minimize the serious harms caused by the coercion, enticement, and transportation of minors, the threat and harm to victims and society caused by such offenses is meaningfully different in nature and scope from that of child pornography offenses.

For all those reasons, child pornography crimes are of a substantially different "nature" and are not "the same quality of offense," as coercion, enticement, or transportation of minors. *See Stradford*, 53 F.4th at 74–75 ("[E]ven different types of sex crimes . . . are dissimilar."); *Kasiem v. Paterson*, No. 10-2627, 2011 WL 723612, at *2 (S.D.N.Y. Feb. 18, 2011) ("[F]elons who commit different crimes are not similarly situated."); *Vanderwall v. Commonwealth of Va.*, No. 05-01341, 2006 WL 6093879, at *7 (E.D. Va. Aug. 9, 2006) ("[P]eople charged with and convicted of different crimes are not similarly situated to each other.").

Plainly, the nature of one's crimes is a relevant factor in deciding who should qualify for benefits under a rehabilitative, criminal justice reform law like the First Step Act. *See Pisciotta v. Warden Fort Dix FCI*, No. 24-1986, 2024 WL 5040035, at *2 (3d Cir. Dec. 9, 2024) (discussing Congress' decision to exclude crimes that are "particularly heinous or create unique and unacceptable" hazards to the community from receiving FSA credit); *Stradford*, 53 F.4th at 74 ("Differences between crimes might reasonably explain differences in treatment.").  Accordingly, prisoners convicted of child pornography offenses are not similarly situated to prisoners convicted of coercion, enticement, or transportation of a minor, and Petitioner has failed to meet the first prong of his equal protection claim.

Although that conclusion is sufficient to end the Court's inquiry, even assuming *arguendo* that these prisoners were similarly situated, it would not save Petitioner's claim.  Under the second prong of the equal protection analysis, Petitioner must show "that the Government's explanation

for the differing treatment does not satisfy the relevant level of scrutiny." *Cabrera*, 921 F.3d at 404 (quoting *Real Alts*, 867 F.3d at 348) (emphasis removed).

Here, the classification at issue is prisoners convicted of child pornography offenses. (ECF No. 1-3, at 3–6.) Petitioner expressly alleges that he is *not* a member of a suspect class and seeks rational basis review of the statute in dispute, 18 U.S.C. § 3632(d)(4)(D). (*Id*. at 3–4 ("[H]ere, there is no allegation that any group is a member of a 'suspect class,' then the standard of review is . . . 'rational basis.'")); *see Stradford*, 53 F.4th at 74 n.3 ("[S]ex offenders do not belong to a suspect or quasi-suspect class."); *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (same). Indeed, many courts have applied rational basis review to classifications based on child pornography offenses. *See, e.g.*, *United States v. Sharma*, 119 F.4th 1141, 1143–47 (9th Cir. 2024); *Cox v. Garland*, No. 23-5108, 2023 WL 7261384, at *1 (D.C. Cir. Oct. 31, 2023); *United States v. Ross*, 948 F.3d 243, 249 (5th Cir. 2020); *United States v. Marshall*, 416 F. App'x 824, 828–29 (11th Cir. 2011). Accordingly, the Court will apply rational basis review to Petitioner's claim.

Under rational basis review, a law will survive "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Stradford*, 53 F.4th at 77 (quoting *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012)). "The challenged legislation enjoys a presumption of validity, and a [petitioner] must negate every conceivable justification for the classification in order to prove that the classification is wholly irrational." *Id*. (quoting *Brian B. ex rel. Lois B. v. Pa. Dep't of Educ.*, 230 F.3d 582, 586 (3d Cir. 2000)) (cleaned up); *see also F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Even if the Government's "conceivable rationale seems tenuously related to its . . . interest," a petitioner must still "show

8

that its criteria and actions are 'wholly irrational.'" *Stradford*, 53 F.4th at 77 (quoting *Cabrera*, 921 F.3d at 404).

Here, Respondent argues "that Congress has the right to distinguish certain offenses by imposing different penalties and other provisions." (ECF No. 8, at 11–12 (internal quotation marks omitted)). Thus, Respondent contends that Congress may treat prisoners differently based on the nature of their crimes, "even where the offenses have similar characteristics." (*Id.*)

Since the enactment of the FSA, several courts have repeatedly concluded that Congress' decision to exclude certain crimes from receiving FSA credits "easily clears the low bar of rational basis review." *See, e.g.*, *Pisciotta v. Thompson*, No. 24-4470, 2024 WL 2130800, at *3 (D.N.J. May 13, 2024) (citing *Fontanez v. Rardin*, No. 23-12415, 2024 WL 1776338, at *4–5 (E.D. Mich. Apr. 24, 2024), *aff'd*, No. 24-1421, 2025 WL 1383403 (6th Cir. Jan. 28, 2025); *Martinez-Palacios v. Garza*, No. 23-42, 2023 WL 6540947, at *2, n.1 (N.D. Ohio Oct. 6, 2023); *United States v. Powell*, No. 11-205, 2023 WL 5489030, at *5 (E.D. Va. Aug. 24, 2023)) *aff'd sub nom. Pisciotta*, 2024 WL 5040035, at *1.

As the Third Circuit explained, "the list of ineligible offenses indicates that Congress chose to exempt certain serious crimes from the Act's benefit." *Pisciotta*, 2024 WL 5040035, at *2. Many of which "are either particularly heinous or create unique and unacceptable communal hazards." *Id.*; *see also Pisciotta*, 2024 WL 2130800, at *3 ("[I]t is clear that . . . the general intent was to eliminate an additional source of [sentence reduction] for those convicted of . . . these crimes which, in Congress's view, were especially serious violations of the law.").

The exclusion of these offenses from earning additional credits is "effectively, a legislative judgment to punish these crimes more severely than others." *Powell*, 2023 WL 5489030, at *5. "It is axiomatic that there is a rational basis for treating the sentence of different types of crimes

9

differently." *Id*. (quoting *Tyson v. Baldwin*, No. 19-648, 2020 WL 469663, at *2 (S.D. Ill. Jan. 29, 2020)) (cleaned up).  Excluding especially serious or heinous crimes is "rationally related to Congress's interest in providing criminal laws which are both just and sufficiently deterrent to criminal activity." *Pisciotta*, 2024 WL 2130800, at *3.

In the case of exclusion for those convicted of child pornography offenses, that legislative judgment could be based on the nature of the offense.  For example, "the particular obscenity of the offense, the need to protect society, and the need to deter future criminal conduct, among others—any one of which could supply the necessary rational basis." *Powell*, 2023 WL 5489030, at *5 (discussing child pornography's ineligibility to earn FSA credits).  Further, as discussed above, child pornography creates enduring lifelong harm to victims and fuels a global market that harms and exploits children. *See United Ramey*, 721 F. App'x at 138.  It is not difficult to imagine that Congress excluded child pornography offenses because they are "particularly heinous" or "create unique and unacceptable" harms to victims and society. *Pisciotta*, 2024 WL 5040035, at *2; *see, e.g.*, *United States v. Rensing*, No. 22-2585, 2023 WL 2364981, at *1 (3d Cir. Mar. 6, 2023) (noting that "distribution of child pornography is a particularly heinous and damaging crime" (internal quotation marks omitted)).

Ultimately, while coercion, enticement, or transportation of a minor may be "objectively serious offenses [that] nevertheless earn credits," under rational basis review, this Court must "accept a legislature's generalizations even when there is an imperfect fit between means and ends." *See Pisciotta*, 2024 WL 5040035, at *2 (quoting *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 321 (1993)).  "Even if Congress's list is arguably imperfect, it cannot be said" that the exclusion of child pornography offenses lacks a rational basis. *See id*.; *Powell*, 2023 WL 5489030, at *5.

Accordingly, because Petitioner has failed to establish either prong of his equal protection claim, the Court will deny the Petition.

## IV.    CONCLUSION

For the reasons stated above, the Court will deny the Petition. An appropriate Order follows.

DATED:  June 2, 2025

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**
